IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02490-DDD-NRN

DARRIN DICKERSON, individually and
on behalf of all others similarly situated,

Plaintiff,

v.

ZAYO GROUP, LLC,

Defendant.

---

**REPORT AND RECOMMENDATION ON
JOINT MOTION FOR SETTLEMENT APPROVAL AND DISMISSAL
WITH PREJUDICE (Dkt. #79)**

---

**N. Reid Neureiter
United States Magistrate Judge**

This matter is before me on an Order (Dkt. #79) by Judge Daniel D. Domenico[1] referring the Joint Motion for Settlement Approval and Dismissal with Prejudice (the "Joint Motion"). (*See* Dkt. #75.) Plaintiffs brought this action asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201. The Court held a hearing on the motion on October 24, 2022. Now, being fully informed and for the reasons discussed below, it is hereby **RECOMMENDED** that the Joint Motion be **GRANTED**.

### BACKGROUND

The following background is drawn from the parties' Memorandum of Law in Support of Joint Motion for Settlement Approval and Dismissal with Prejudice (Dkt. #76)

---

[1] This matter was reassigned to Judge Nina Y. Wang on August 5, 2022 upon her appointment as a United States District Judge. (Dkt. #80.)

(the "Memorandum") and other documents on the docket to which the Memorandum cites. Named Plaintiff Darrin Dickerson worked as a Service Delivery Coordinator for Defendant Zayo Group, LLC ("Defendant" or "Zayo") from July 2018 through November 2019 and again starting around July 2020. On April 19, 2020, Mr. Dickerson filed this putative collective action pursuant to the FLSA, alleging that Zayo improperly classified him and other similarly situated Service Delivery Coordinators as exempt from federal overtime requirement and failing to pay overtime wages. Zayo, for its part, denies any wrongdoing.

In January 2021, the parties stipulated to conditional certification of an FLSA collective. (Dkt. #27.) The Court approved the stipulation and adopted Zayo's proposed notice. (Dkt. #34.) Notice was sent to individuals included in the following collective class definition: "All current and former employees of Zayo Group, LLC who worked as [Service Delivery Coordinators] in the United States between March 26, 2018 to March 26, 2021." (Dkt. #27.) The deadline to respond to respond to the initial notice period was May 25, 2021. There are 18 Opt-in Plaintiffs who have joined in this case and are represented by Plaintiff's counsel.

After the close of the opt-in period, the Court issued a Scheduling Order and set June 22, 2021 as the deadline to amend the pleadings. (Dkt. #47.) Plaintiff timely filed an opposed motion to amend the complaint to add Colorado state law overtime claims on behalf of himself and a putative Rule 23 class. (Dkt. #48.) On September 20, 2021, the Court recommended granting the motion to the extent Mr. Dickerson sought to bring his individual state law claim, but denying the motion to the extend it sought to add a Colorado state law claim as a Rule 23 class action. (Dkt. #58, the "Recommendation.")

Plaintiff timely objected to the Recommendation. (Dkt. #75.) However, Plaintiffs filed the Notice of Settlement on April 25, 2022, before Judge Domenico had ruled on Plaintiffs' objection to the Court's Recommendation. (Dkt. #69.) In light of the Notice of Settlement, Judge Domenico found that Plaintiff's motion to amend the complaint and the Recommendation were moot. (Dkt. #78.)

On March 15, 2022, Opt-In Plaintiff Ryan Myers filed a separate lawsuit against Zayo in the District Court for Boulder County, Colorado, asserting individual and class action claims for unpaid overtime wages under Colorado law. That suit is titled *Myers v. Zayo Group, LLC*, Case No. 22CV30164 (the "*Myers*" action").

After two mediation sessions conducted by Katy Miller, the parties have agreed to settle this FLSA case and the *Myers* Action. The terms of the settlement are memorialized in the Settlement Agreement now before the Court.

The Settlement Agreement provides for a Gross Settlement Amount of $365,000. Attorneys' fees in the amount of $121,666.67 (one-third of the Gross Settlement Amount) and costs of $11,612.92 will be deducted. Further, Plaintiff Dickerson will receive a $7,500 service payment from the Gross Settlement Amount and Plaintiff Myers in the *Myers* action will receive an allocation of $15,000. This leaves $209,220.41, the Net Settlement Amount, to be distributed to Plaintiffs on a pro rata basis.

The parties provide the following explanation of how the Net Settlement Amount will be distributed:

> Each Plaintiff's share of the Net Settlement Amount has been calculated by Plaintiffs' counsel based on individual compensation history and job history, as reflected in Zayo's records, and individual hours estimates based on Plaintiffs' discovery responses. Using this data, Plaintiffs' counsel

>calculated individual damages amounts, assuming half-time overtime rate for claims under federal law, and a time and a half overtime rate for claims under Colorado law, and liquidated damages under federal law. *Id*. The calculations applied a discount for federal claims in the third year of the statute of limitations, as well as for time periods when Plaintiffs were working under other position titles. *Id*. The individual allocations were determined by allocating the Net Settlement Amount pro rata based on each individual's damage amount. *Id*. For each settlement payment, fifty percent will be treated as back wages, with applicable state and federal taxes withheld, and the remaining fifty percent treated as non-wage penalties and liquidated damages. The settlement payments range from $1,213.27 to $30,869.77, with an average of $12,301.53.

(Dkt. #76 at 5 (internal citations omitted).)

## ANALYSIS

"The state of court involvement in FLSA dismissals is unsettled." *Carroll v. Schlumberger Tech. Corp.*, No. 20-cv-00619-PAB-STV, 2021 WL 4245370, at *1 (D. Colo. Sept. 16, 2021); *see also Logan v. United Am. Sec., LLC*, No. 21-CV-00257-NYW, 2022 WL 2966857, at *2 (D. Colo. July 27, 2022) ("Neither the Supreme Court nor Tenth Circuit has addressed whether a court must approve a settlement agreement under the FLSA, and there is a split of authority within the District of Colorado on this issue.") (internal citations omitted). However, "there does not appear to be disagreement at this time over whether FLSA settlements may be approved by" a court. *Slaughter v. Sykes Enters., Inc.*, No. 17-cv-02038-KLM, 2019 WL 529512, at *2–6 (D. Colo. Feb. 11, 2019). The parties in the instant action affirmatively seek court approval of their Settlement Agreement, so the Court considers the traditional factors for determining whether to approve the settlement agreement: whether (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees. *See Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014

4

WL 700096, at *1 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

**I. Bona Fide Dispute**

Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists. *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1172 (D. Colo. 2018) (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)); *Baker*, 2014 WL 700096, at *1. To meet this obligation, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.* (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 718 (E.D. La. 2008)). The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement. *Id.*

The parties have described the dispute, Zayo's business, and the work performed by the Service Delivery Coordinators. Plaintiffs argue that these employees' duties were routine, non-exempt work, while Zayo claims that their work satisfies the requirements of the administration exemption, in part because the work involves the exercise of discretion and independent judgment with respect to matters of significance under 29 U.S.C. § 213. The parties also dispute whether Zayo acted in good faith in classifying the Service Delivery Coordinators and the computation of damages owed, including the number of overtime hours worked and whether the fluctuation workweek

5

method applied. Finally, the parties required two separate rounds of mediation before an experienced mediator to reach a resolution of this case. The Court is satisfied that the agreement resolves a bona fide dispute.

### II. Fair and Equitable

To be fair and equitable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales. *Davis*, 292 F. Supp. 3d at 1173. Courts weigh a number of factors on this consideration, including: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery. *Id.* (citing *Hargrove v. Ryla Teleservices, Inc.*, Case No. 2:11-cv-344, 2013 WL 1897027, at *2 (E.D. Va. Apr. 12, 2013). There is a strong presumption in favor of finding a settlement fair. *Id.*

Discovery in this matter included interrogatory responses and document production from Mr. Dickerson, the Opt-In Plaintiffs, and Defendant; and depositions of Mr. Dickerson, Zayo's corporate representative, and another Zayo witness.

As to the stage of the proceedings, the Settlement Agreement was reached in advance of certification and dispositive motion briefing. However, the time and expense associated with such motion practice would have been significant and the issues in this case are hotly contested. The Settlement Agreement brings immediate and substantial compensation to Plaintiffs without the need for lengthy litigation.

The Court finds no evidence of fraud or collusion in the settlement, which was result of an arms-length negotiation with experienced counsel on both sides, mediated by an experienced wage and hour mediator.

With respect to the probability of success on the merits, there were several disputed issues, including: (1) whether the FLSA's administrative exemption applies to Plaintiffs, (2) whether Defendant acted in good faith in classifying Plaintiffs as exempt or were willful such that for liquidated (double) damages apply, (3) whether continued certification under section 216(b) of the FLSA is appropriate, and (4) the number of overtime hours worked by Plaintiffs. (Dkt. #76 at 9.) Plaintiffs' counsel conceded that, despite their firm belief in their claims, there was some risk, including Zayo's defense that the administrative exemption applied. Plaintiffs also stated it would be "challenging" to prove willfulness so as to obtain the three-year statute of limitations. Both parties acknowledged the risk relating to the fluctuating workweek to determine the appropriate overtime multiplier.

The amount of settlement in relation to Plaintiffs' potential recovery also weighs in favor of approving the settlement. According to Plaintiffs' counsel, Plaintiffs' "best day" recovery—prevailing on every one of the disputed issues mentioned above—is approximately $728,748. The individual settlement payments provide each Plaintiff with approximately 30% of their "best day", including an award of double damages. Importantly, as Plaintiffs note, this is a particularly good value for the four Plaintiffs whose claims fall entirely in the three-year statute of limitations. If Plaintiffs failed to show willfulness, these individuals would not be entitled to any recovery. Finally, the

Court acknowledges the value of prompt and certain payment over protracted, risky, and expensive litigation.

The Court next examines whether the Settlement Agreement undermines the purpose of the FLSA, "which is to protect employees' rights from employers who generally wield superior bargaining power." *Morton v. Transcend Servs., Inc.*, No. 15-cv-01393-PAB-NYW, 2017 WL 977812, at *2 (D. Colo. Mar. 13, 2017). Factors that might cause a court to reject a settlement include (1) the presence of other employees similarly situated to the claimant, (2) a likelihood that the claimants' circumstances will recur, and (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region. *Id.* (citing *Dees.*, 706 F. Supp. 2d at 1244).

Here, Mr. Dickerson and 18 similarly situated employees will receive a fair settlement amount in exchange for releasing their claims and foregoing further litigation. Any similarly situated individual who did not join this action will not release any claims against Zayo. *See Aguilar v. Pepper Asian Inc.*, No. 21-cv-02740-RM-NYW, 2022 WL 408237, at *3 (D. Colo. Feb. 10, 2022) (citing *Morton*, 2017 WL 977182, at *2) (explaining that settlement agreement does not undermine purposes of FLSA where the settlement agreement covers only the plaintiffs' claims and does not affect the rights of any other employees).

The parties also explain that claimants' circumstances are unlikely to recur as most Plaintiffs are not currently employed with Zayo and those who are no longer work under the same title. In any event, the release only runs through July 13, 2022, the date Joint Motion for Settlement Approval and Dismissal with Prejudice was filed. Any conduct arising thereafter would subject Zayo to suit.

8

The Court also notes that there is no evidence that Zayo has a history of non-compliance with the FLSA.

The Court also considers whether the Settlement Agreement's confidentiality provision runs afoul of the FLSA. "It is well-settled that . . . a confidentiality provision in an FLSA settlement agreement 'contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights.'" *Hoffman v. Poulsen Pizza LLC, et al.*, 2016 WL 2848919, at *3 (D. Kan. May 16, 2016) (quoting *Barbosa v. Nat'l Beef Packing Co.*, LLC, 2014 WL 5099423, at *8 (D. Kan. Oct. 10, 2014); see also *Gamble v. Air Serv. Corp.*, 247 F. Supp. 3d 1302, 1306 (N.D. Ga. 2017) (noting that confidentiality provisions in FLSA settlements not only "frustrate the spirit and intent of the statute," but also "arguably violate provisions of the FLSA itself").

The subject confidentiality provision provides:

> Settlement Participants, Plaintiffs' Counsel, and Myers' Co-Counsel agree neither they nor anyone acting on their behalf will make public comment, communications to media, or any form of advertising or public announcement (including social media) regarding the settlement of the Actions or this Agreement. Further, Settlement Participants, Plaintiffs' Counsel, and Myers' Co-Counsel shall not, directly or indirectly, at any time, (a) issue a press or media release or otherwise notify the media about the Settlement, (b) initiate any contact with the press, other media (including social media), or any third party about the Settlement, (c) advertise or make any public statements regarding the terms of the Settlement through written, recorded or electronic communications, (d) respond to any inquiry from the press, or media regarding the Settlement, or (e) have any communication with the press or other media about the Actions, including, but not limited to the fact, amount and/or the terms of the Settlement, either before or after the Court approves this Agreement. Plaintiffs' Counsel and Myers' Co-Counsel will not identify Zayo in any information about the settlement posted on their website(s). To the extent limited public disclosures are required to effectuate the Agreement, or to notify the courts or parties in any pending, related proceeding, such limited and necessary details may be revealed with the consent of all Parties. However, any such disclosures shall not

> constitute a waiver of confidentiality with respect to any information not publicly disclosed. Nothing herein restricts Settlement Participants from disclosing the Agreement to their immediate family members or legal or financial advisors. Nothing in this paragraph will prevent Settlement Participants, Plaintiffs' Counsel and Myers' Co-Counsel from stating that the matter has resolved or settled.

(Dkt. #76-2 ¶ 36.)

As expressed at oral argument, the Court has serious concerns with a confidentiality provision in an FLSA settlement. Of particular concern is a provision that not only bars issuance of a press release or initiating contact with the press, but also prohibits Plaintiffs from even speaking to the media in response to an inquiry. Initially, the parties sought this this confidentiality provision *in addition to* maintaining redacted versions of the Settlement Agreement on the docket.

Relying on *McGee v. Ann's Choice, Inc.*, Civ. Action No 12–2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2018), and *Ostrander v. Customer Eng'g Servs., LLC*, No. 15-cv-01476, 2019 WL 764570, *4–5 (D. Colo. 2019), the parties argue that this provision is permissible.

In *McGee*, the parties proposed a confidentiality provision reading: "Neither Party nor their attorneys or anyone else acting on their behalf shall seek any publicity or make any statement to the media relative to this Settlement. If any Party or counsel is contacted by any media representative, they shall decline to comment on this Lawsuit or this Settlement Agreement." *McGee*, 2014 WL 2514582, at *3 (emphasis omitted). The *McGee* court noted that this provision was not so restrictive as to frustrate the FLSA because all filings in the case were publicly available, and the terms of the provision were narrowly drawn to prohibit only statements to the media.

In *Ostrander*, Chief Judge Philip A. Brimmer considered a confidentiality term that "generally prohibit[ed] members of the collective from disclosing information regarding the settlement to third parties." *Ostrander*, 2019 WL 764570, at *5. Judge Brimmer also found that this provision was permissible, reasoning: "the parties have made the agreement public by filing it on the Court's docket without a restriction. Because the case can provide notice to potential plaintiffs of their FLSA rights, the parties' settlement does not undermine the purposes of the FLSA." *Id.* (citing *Dees*, 706 F. Supp. 2d at 1244–45).

Unlike *McGee* and *Ostrander*, the parties in this case did not publicly file the Settlement Agreement. They initially filed the Memorandum and related documents, including the proposed Settlement Agreement, under Level 1 Restriction (*see* Dkt. ##76, 76-1–76-3) and Defendant asked the Court to maintain wholesale restriction of the documents. (Dkt. #77.) After a hearing on the propriety of restricting the documents, the Court denied the motion to restrict without prejudice and ordered that Defendant submit additional briefing concerning restriction and potential redactions to the documents in lieu of wholesale restriction. (Dkt. #82.) After receiving additional briefing (Dkt. #83), the Court found that redaction of the settlement amounts and other financial information was justified. The redacted documents are available at Dkt. #84.

Because, as of today, the settlement amounts are redacted, all the information related to the settlement is not truly publicly available. If the restrictive confidentiality provision is approved while only redacted documents were publicly available, there is no way for the press or the public to discover the nature of the settlement. Such a result flies in the face of the FLSA as well as the Court's imperative to keep judicial

11

proceedings public. If the parties want a private settlement agreement, they are entitled to reach one. But when they come to the Court for judicial approval and affirmation that their agreement is consistent with the goals of the FLSA, the Settlement Agreement and the Court's approval need to be subject to the public's scrutiny.

During the hearing on the Joint Motion, the Court notified the parties that, unless the Settlement Agreement was made fully publicly available, the Court would recommend rejecting settlement. On October 25, 2022, the parties filed a Joint Notice of Position Regarding Settlement Approval (Dkt. #89) stipulating that the Settlement Agreement be public in the interest of gaining settlement approval. Given this stipulation, which mitigates the Court's concerns about public accessibility, the Court finds that the confidentiality provision is not so restrictive as to undermine the FLSA. *See Anderson v. Walgreen Co.*, No. 14-cv-02642-RM-MJW, 2016 WL 74934, at *4 (D. Colo. Jan. 7, 2016) ("The Court, with its ruling to unrestrict the settlement agreement (and the parties' agreement to withdraw the Motion to Restrict, has made public the settlement agreement's terms. Although there is a confidentiality provision in the settlement agreement, the Court has fulfilled the FLSA's public policy by granting public access to the settlement agreement.") (internal citations omitted).

### III. Attorneys' Fees

The Court next considers whether the amount provided for in the Settlement Agreement for Plaintiffs' attorneys' fees is reasonable. The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b); *see also Gray v. Phillips Petrol. Co.*, 971 F.2d 591, 593 (10th Cir. 1992). Though

the fee is mandatory, the Court must determine whether the amount sought is reasonable.

In this case, the parties have agreed to a fee award in in the amount of $121,666.67, which is one-third of the Gross Settlement Amount, and costs of $11,612.92. The Court finds these amounts reasonable. In common fund cases, it is standard to use a percentage method when calculating attorneys' fees. *Gottlieb v Barry*, 43 F.3d 474, 482–83 (10th Cir. 1994). The 33.3% fee in this case is well within the permissible range and presumptively reasonable. *See, e.g.*, *Vaszlavik v. Storage Technology Corp.*, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000) ("A 30% common fund fee award is in the middle of the ordinary 20%–50% range and is presumptively reasonable."); *Davis*, 292 F. Supp. 3d at 1174 (finding award equal to thirty-seven percent of gross settlement amount to be "well within the normal range for a contingent fee award"); *Koehler v. Freightquote.com, Inc.*, 2016 WL 3743098, at *7 (D. Kan. July 13, 2016) (approving fee award amounting to thirty-three percent of the common fund); *Barbosa*, 2015 WL 4920292, at *11 (finding that fee award, which equaled thirty-three percent of the total settlement amount, was "within the customary percentage of the fund approved" by the court).[2]

After reviewing the explanation of attorneys' fees and costs in the declaration of plaintiff's counsel, Mr. Brome, the Court also finds that $11,612.92 is a reasonable award of costs. As Plaintiffs note, this amount relates only to the current action, not the

---

[2] The fee amount is calculated at one-third of the Gross Settlement Amount, which includes a $15,000 allocation for the *Myers* case. Even if the Court considered the attorneys' fees as a percentage of the settlement proceeds tied only to the *Dickerson* matter ($350,000), the fee award would be less than 35% of that amount and still reasonable in light of the authority previously cited.

*Myers* action. Any costs attributable to *Myers* will be reimbursed from the *Myers* additional allocation.

### IV. Service Payment to Named Plaintiff Dickerson

Finally, the Court considers whether Mr. Dickerson should be awarded a service or incentive award to Mr. Dickerson for his role as the named plaintiff in this action. The agreement provides for a service award of $7,500.

Service or ""incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09 Civ. 1543, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010). When reviewing incentive awards, courts consider "(1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Id.* at *6 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The Court finds that the $7,500 service award for Mr. Dickerson is reasonable and should be awarded. This suit has been pending for more than two years, and Mr. Dickerson has been a part of it since its inception. His agreement to bring this suit as a collective action certainly did not accelerate prospects for recovery. Mr. Dickerson was instrumental in building the case. Plaintiffs describe that he "participated in an extensive pre-suit investigation and provided key information to Plaintiffs' counsel throughout this case," included providing mandatory initial discovery responses and responding to

individualized discovery. (Dkt. #76 at 17.) Additionally, Mr. Dickerson was the only Plaintiff to sit for a deposition.

The amount of the service award is within the range of service awards approved by courts in the Tenth Circuit. *See, e.g.*, *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (approving a $7,500 service payment where total settlement amount was $178,928.84); *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (approving incentive award of $7,500 where total settlement amount was almost $2.5 million); *Thompson v. Quest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) (finding that "reasonable incentive payments have become common for class representatives, and . . . for FLSA named plaintiffs as well" and approving a $5,000 incentive award to the named plaintiff who "attached his name to [the] federal lawsuit, making the public and his future employers aware that he filed suit against his former employer" (citations and internal quotation marks omitted)).

The Court also notes that Mr. Dickerson has agreed to a general release, whereas other Opt-In Plaintiffs released only their federal and state unpaid overtime claims, and claims for liquidated or other damages, penalties, premium pay, interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the FLSA or state or local wage-related laws up to July 13, 2022, date the Joint Motion was filed. This general release further supports the award of a service payment.

## CONCLUSION

In light of the foregoing, it is hereby **RECOMMENDED** that the motion be **GRANTED;** the Settlement Agreement be **APPROVED;** the final certification of the

15

collective be **GRANTED** for the purpose of facilitating the settlement; and the case be **DISMISSED** with prejudice.

It is further **ORDERED** that the Level 1 Restriction on Dkt. ## 76, 76-1–76-3 is **LIFTED**. The Clerk of Court shall make these documents publicly available.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.***, 183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse***, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Date: October 31, 2022

_____
N. Reid Neureiter
United States Magistrate Judge